## In re DREYFUS.

### Patent Appeal No. 3361.

Court of Customs and Patent Appeals.
Dec. 24, 1934.

I. Seltzer and C. W. Levinson, both of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner and rejecting, in view of the prior art, claims 1 to 34, inclusive, of appellant's application. It appears that two claims of the application have been allowed. Appellant has moved to dismiss the appeal as to claims 4, 6, 8, 11, 12, 13, 16, 18, 19, 20, 21, 22, 23, 24, 29, 30, 31, 32, 33, and 34, and it will be so ordered. The remaining claims before us are 1, 2, 3, 5, 7, 9, 10, 14, 15, 17, 25, 26, 27, and 28.

Claim 1 is illustrative of the claims here involved and reads as follows: "1. Process for the manufacture of alkyl ethers of cellulose which in no stage of etherification are soluble in hot or cold water nor have the property of being precipitated from alcoholic solution by alcoholic solutions of alkali, said process comprising treating a cellulosic body not soluble in alkali, with an aliphatic etherifying agent in presence of alkali, whilst restricting the water present, disregarding that formed in the etherification itself, to an amount not greater than from about the natural humidity content of the cellulosic body up to about four times the weight of the cellulosic body, the total alkali used in the etherification process being at lease equal in weight to said restricted quantity of water, disregarding water formed in the etherification."

There is but one reference cited, Lilienfeld, 1,188,376, June 20, 1916.

Appellant's alleged invention is aptly described in the statement of the examiner as follows:

"The present invention relates to the manufacture of cellulose ethers, and more particularly to the manufacture of alkyl ethers of cellulose not soluble in hot or cold water.

"The process comprises the usual steps of first treating the cellulose, in the form of cotton for instance, with a solution of caustic soda, and after said caustic soda solution has been thoroughly incorporated into the cellulose, the etherification agent, di-methyl or di-ethyl sulfate in this case, with or without additional caustic soda is reacted with the caustic soda-cellulose product first formed. A practically theoretical, quantitative yield of the corresponding ether is claimed for the process.

"The alleged inventive features of the process reside in the proportions of reactants employed, especial emphasis being placed on the water content which may range from a quantity corresponding to the natural humidity content of the cellulose used, to 400% relative to the weight of the cellulose, which is taken as 100%, i. e., a range of from about 8 to 400% of $H_2O$ per 100% of cellulose. The quantity of caustic soda used varies from 1 to 19 times the weight of water, corresponding to a 50–95% caustic soda solution.

"The use of inert solvents is suggested as a reaction media, and the process is carried out at a temperature not exceeding 80°C."

The patent to Lilienfeld relates to alkyl ethers of cellulose and process of making the same. The provisions of said patent material here are briefly, and we think correctly, summarized in the brief of the Solicitor for the Patent Office, as follows: " * * * The essential steps consist in the treatment of a cellulosic material with an aqueous solution of caustic soda and subsequent reacting the resulting product with an etherifying agent such as diethyl sulfate to form the corresponding ether of cellulose. A wide variety of cellulosic materials are disclosed as suitable starting materials, and a caustic solution ranging from 10 to over 40% is used. Lilienfeld also teaches the desirability of using an organic solvent as a reaction media * * * and indicates that the reaction should be carried out at moderate temperatures. The ethers obtained are described as varying from soluble to insoluble forms, depending of course upon the relative proportions of ingredients employed."

The claims were found by both tribunals of the Patent Office to be unpatentable in view of the Lilienfeld reference.

Appellant's counsel in his brief and upon oral argument asserted that all of the claims here involved were at one time allowed by the examiner, and that he reversed himself only after a decision of the Board of Appeals in a certain interference proceeding involving appellant's present application, holding certain claims not here involved unpatentable; the examiner being of the opinion that the reasons given by the Board of Appeals for holding the claims involved in said interference unpatentable were applicable to the claims involved in this appeal.

An examination of the record discloses that the examiner, on February 9, 1922, held that claims 1, 2, 3, 5, 7, and 9, of the claims here being considered, were allowable. On

July 23, 1931, the examiner rejected all of the claims here upon appeal, and in his letter of rejection he stated, referring to the decision of the Board of Appeals in the interference proceeding hereinabove referred to, as follows:

"The Board of Appeals in holding claims 84 to 87 (which were the issues of Interference No. 51209) to be unpatentable stated:

" 'In the present case, as we see it, the specifications of the parties do not clearly point out what is the invention over the prior art; they refer to a lot of percentages of the ingredients which are within the prior art; give a lot of examples with widely varying percentages with no statement as to whether one is better than another or whether any of them give a different result from the prior art. The claims will read on some of the examples and not on others but there is nothing in the specification to indicate that there is any material difference in results obtained. * * *

" 'In our opinion the specific limitations of the claims do not define anything of an inventive character as required by Section 4888, Revised Statutes, and are therefore unpatentable.'

"This ground of rejection is considered to apply to claims 1 to 34 inclusive as well, and they are accordingly rejected as being devoid of invention over the prior art such as Lilienfeld 1,188,376."

On July 21, 1932, this rejection was made final in the following letter:

"Responsive to letter filed July 8, 1932.

"Claims 1 to 34 were rejected in the office action of July 23, 1931, as being unpatentable over Lilienfeld, #1,188,376, and on the grounds advanced by the Board of Appeals in holding claims 84 to 87 unpatentable. Claims 1 to 34 were again, and finally, rejected in the office action of February 10, 1932, not on different grounds, but upon the original grounds amplified for the sake of clarity and in view of applicant's response to the office action of July 23, 1931. There has been no variance, therefore, and the final rejection is proper and not contrary to the office rules in that regard.

"The fact that this application has been pending before the office for twelve years further justifies the examiner's position.

"Claims 1 to 34 accordingly stand *finally* rejected under the office action of February 10, 1932, and the six months run from that date."

As hereinbefore indicated, the Board of Appeals affirmed this decision of the examiner. The board concluded its decision with the following statement:

"Summing up, we find that the process of the Lilienfeld patent is in general the same as that of the application. Lilienfeld states that the properties of the alkyl ethers formed by the process vary greatly according to the number and nature of the alkyl radicals linked ether-fashion with the cellulose molecule and that such number of introduced alkyl radicals depends upon the quantity of the inorganic alkyl esters employed and on the conditions of working (temperture, nature and quantity of the basic substances, i. e., the alkali, concentration of the reaction mixtures, i. e., quantity of water). He describes the alkyl ethers resulting from the process as insoluble in hot or cold water and the starting material as insoluble in alkali. While he does not disclose the exact proportions of the ingredients specified by appellant in his claims, yet both the patentee and the applicant state that their invention is not limited to the specific examples given, which are only illustrative and in our opinion the rejected claims cover only proportions which are not critical and which might be found by trial by any skilled chemist in carrying out the instructions of the patent and there is no showing that the applicant obtains any results which are not disclosed in the patent.

"We find nothing patentable in the rejected claims and the decision of the Examiner is affirmed."

In the brief of appellant's counsel it is stated that appellant's process "is differentiated from Lilienfeld by the two conditions taken together that the water may not exceed 4 times the weight of the cellulose and that the alkali must be at least equal to the water." It is appellant's contention that by his process cellulose ethers are produced which are insoluble in water; that his starting material is insoluble in alkali or water; and that at no stage of his process are the products soluble in alkali or water. He further contends that Lilienfeld does not show this or teach how appellant's process may be accomplished.

It appears that Lilienfeld gives twelve examples illustrating his process. It is conceded that in his eleventh example he shows a use of water in appellant's range of proportions of water to cellulose, but it is also clear that in this example the total alkali used in the etherification process is less than the weight of the water. It should be observed that appellant's claims call for a water content ranging from the natural humidity of

the cellulose body up to about four times the weight of the cellulose body, the alkali used to be at least equal in weight to the quantity of water.

While the resulting product shown in Lilienfeld's 11th example is, according to his specification, soluble in cold water but insoluble in hot water, both the examiner and the board held that Lilienfeld's seventh example discloses the preparation of an ether which is apparently insoluble in water in all stages, and certainly insoluble in water in its final stage. This holding appears to us to be correct.

It appears also that the highest quantity of alkali disclosed by Lilienfeld is about .7 of one part of alkali to one part of water.

It being clear that Lilienfeld has disclosed a proportion of water within the range of water disclosed by appellant, patentability of appellant's claims may not be predicated alone upon the proportions of water claimed by him. The question remains whether there was invention in increasing the number of parts of alkali per one part of water from about .7 of a part of alkali to one part of water to at least one part of alkali to one part of water, in combination with the water content claimed by appellant. This is a very technical question, and before we would be warranted in reversing the decision of the Board of Appeals we think it should appear from the record that the increased proportion of alkali disclosed by appellant over that disclosed by Lilienfeld produces a result different in kind from the result produced by the process disclosed by Lilienfeld, and not merely different in degree. We find nothing in appellant's specification or elsewhere in the record to indicate that the proportions of water and alkali used by him are critical, but on the contrary we do find recitals in his specification which indicate to us that the proportions disclosed by him are not critical. Among these recitals are the following:

"As illustrating the importance of the concentrated application of the alkali and not employing more water than would correspond at the lowest to a 50% solution of the alkali in the sense above indicated, it may be explained that in proportion as one goes below 50% the yields of the finished soluble product of good quality decrease, whilst in proportion as one goes above this lower limit so the yields increase with the same quantity of alkali and diethyl sulphate. * * *

"If the quantity of water is increased so that the alkali is added in a solution of less than 50% the yields of the finished product for the same quantity of raw material used decrease accordingly and the process becomes uneconomical. * * * "

While appellant's counsel contends that the foregoing quotations show that appellant's proportions claimed are critical, it seems to us that they indicate that the results secured by the use of such proportions do not differ in kind from the results secured by the use of the proportions shown by Lilienfeld, but only in degree.

It is the general rule that while the change in the proportions of a combination shown to be old, such as is here involved, may be inventive, such change must be critical as compared with the proportions used in prior processes, producing a difference in kind rather than degree. In re Lilienfeld, 67 F. (2d) 920, 21 C. C. P. A. (Patents) 792; In re Wells, 56 F.(2d) 674, 19 C. C. P. A. (Patents) 1044; In re Richter, 53 F.(2d) 525, 19 C. C. P. A. (Patents) 756.

We are not satisfied that the Board of Appeals erred in holding the claims here involved to be unpatentable over the reference Lilienfeld, and its decision, as to claims 1, 2, 3, 5, 7, 9, 10, 14, 15, 17, 25, 26, 27, and 28, is affirmed; the appeal as to the remaining claims is, for the reason hereinbefore set forth dismissed.

Affirmed.